UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID CZAPIEWSKI,

                    Plaintiff,

        v.                                          Case No. 26-cv-373-pp

JAMES KENT, *et al.*,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR SCHEDULING CONFERENCE (DKT. NO. 9) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff David Czapiewski, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his amended complaint, dkt. no. 10. It also resolves his motion for scheduling conference. Dkt. No. 9.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 20, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $1.58. Dkt. No. 7. The court received that fee on April 15, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff has sued James Kent, security director of the restrictive housing unit (RHU) at Green Bay Correctional Institution; Tonia Rozmarynoski, RHU security supervisor; and James Koehler, RHU unit manager. Dkt. No. 10 at ¶¶7-9.

The plaintiff alleges that on April 18, 2025, he was placed on "Back of Cell Kneel" and "Spit Mask" restriction. Id. at ¶11. The restriction allegedly hinders telephone use because the telephone "rolls up to the trap door of the

3

front of the cell in RSHU[.]" Id. at ¶13. The plaintiff states that there are alternatives for incarcerated individuals to use the telephone, such as taking him to the law library, using the "trap box" or having a sergeant present. Id. at ¶14.

The plaintiff alleges that on September 14, 2025, Officer Blance Bankston (not a defendant) issued him a conduct report that falsely charged him with "threats." Id. at ¶17. On October 3, 2025, the plaintiff allegedly was found not guilty of making threats to assault staff. Id. at ¶¶18, 20. The plaintiff states that on that same day, he received an "unjustified restriction." Id. at ¶16. He states that he received this restriction because of the conduct report and was told that it was a precaution and was not punitive in nature. Id. at ¶19. The plaintiff states that defendant Rozmarynoski, the hearing officer, "retaliated by changing the reasoning for the precaution to the fact that [the plaintiff] exercised his right to proceed Full Due Process on his conduct report, his pa[s]t history of assaults to staff, and that he hit the inside of his cell door." Id. at ¶20. The plaintiff says that he "was not on restriction before conduct report incident." Id. He allegedly received more punishment "going full due process and getting found not guilty of threats than when he was offered to go uncontested and acquiesce to threats and live with precaution/restriction." Id. at ¶21. The plaintiff states that he was on these precautions from April 18, 2025 through October 2025. Id. at ¶22.

The plaintiff asserts that because the defendants knew about the restrictions, their consequences and/or the retaliatory use of them, they were

4

the proximate cause of his "loss of liberty and injuries." Id. at ¶23. He states that per policy, restrictions should last only for thirty days and not be extended unless security and safety interests justify an extension. Id. at ¶24.

The plaintiff claims that the defendants placed him on "back of cell kneel" and "spit mask" restrictions that suppressed his ability to associate with his family, friends and attorneys. Id. at ¶25. This allegedly caused "loss of liberties and family relationships and den[ied] [the plaintiff] access to courts and ability to seek legal advice[.]" Id. The plaintiff also claims that the conduct report issued on September 14, 2025, which precipitated the "back of cell kneel" precaution approved by Kent and for which the plaintiff was found not guilty, led to Rozmarynoski changing the reason for the restriction in retaliation for the plaintiff exercising his right to a full due process hearing. Id. at ¶26. The plaintiff claims that from April 18, 2025 to the present, "intermittently, [he] has had his restriction/precaution extended for no legitimate reason by all defendants in retaliation for protected speech (i.e. filing complaints)[.]" Id. at ¶27.

For relief, the plaintiff seeks declaratory relief, injunctive relief, compensatory damages, nominal damages and punitive damages. Id. at 5.

C.      Analysis

The plaintiff's allegations are conflicting. He says that on April 18, 2025, he was placed on a "back of cell kneel" and "spit mask" restriction that hindered his ability to use the telephone. The plaintiff does not say who placed him on the restriction. He says that he was on the restriction from April 18,

2025 through October 2025. But the plaintiff also says that on September 14, 2025—five months after the restriction allegedly began—he received a conduct report for threatening staff, and that Kent "approved" the conduct report. He says that this conduct report precipitated the "back of cell kneel" restriction, and that he was not on a restriction before receiving the conduct report. The plaintiff also asserts that after he was found not guilty of the threat charge on October 3, 2025, Rozmarynoski extended the "back of cell kneel" restriction in retaliation for him exercising his right to a full due process hearing.

The Seventh Circuit has expressed doubt about whether denial of access to a telephone infringes the First Amendment. See Holmes v. Godinez, 311 F.R.D. 177, 232-33 (N.D. Ill. 2015) (quoting Arsberry v. Illionois, 244 F.3d 558, 564-65 (7th Cir. 2001) ("Not to allow [prisoners] access to a telephone might be questionable on other grounds, but to suppose that it would infringe the First Amendment would be doctrinaire in the extreme."); see also Boriboune v. Litscher, 91 F. App'x 498, 499 (7th Cir. 2003) ("But though prisoners have a right under the First Amendment to communicate with others outside the prison, we have expressed doubt that this amounts to an unqualified right for a prison to have access to a telephone.").

The plaintiff states that not being able to call his attorney denied him access to the courts because it prevented him from seeking legal advice. To state a claim about the denial of access to the courts, an incarcerated person must allege that the actions of prison officials "prejudice[d] a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of

6

confinement." <u>Marshall v. Knight</u>, 445 F.3d 965, 968 (7th Cir. 2006). The plaintiff must provide detail about "the underlying cause of action and its lost remedy . . . sufficient to give fair notice to a defendant." <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002). The plaintiff does not allege that the inability to call his attorney had any impact on an ongoing case. <u>See</u> <u>In re Maxy</u>, 674 F.3d 658, 660 (7th Cir. 2012) ("[T]o satisfactorily state a claim for an infringement of the right of access, prisoners must also allege an actual injury."). The plaintiff does not state a claim for denial of access to the courts.

The plaintiff alleges that the restriction hindered his ability to call his friends and family. This allegation could be an attempt to state a claim for violation of the plaintiff's right to association, which is rooted in the Due Process Clause of the Fourteenth Amendment. <u>Gill v. Inmate Call Solutions</u>, Case No. 25-cv-757, 2025 WL 2144758, at *5 (E.D. Wis. July 29, 2025) (citing <u>Nigl v. Litscher</u>, Case No. 17-cv-925, 2018 WL 1175165, at *3 (E.D. Wis. Mar. 6, 2018)); <u>see also</u> <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 617-18 (1984); <u>Montgomery v. Stefaniak</u>, 410 F.3d 933, 937 (7th Cir. 2005). Under the Fourteenth Amendment, incarcerated individuals have the right "'to enter into and maintain certain intimate human relationships.'" <u>Bilka v. Farrey</u>, 447 F. App'x 742, 744 (7th Cir. 2011) (quoting <u>Roberts</u>, 468 U.S. at 617-18). But this right is not unlimited for incarcerated persons. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131 (2003). It remains "'an open question' whether incarcerated persons have a constitutional right to visits with family members." <u>Gill</u>, 2025 WL 2144758, at *5 (quoting <u>Green v. Noble</u>, Case No. 21-cv-615, 2022 WL 656877,

7

at *5 (E.D. Wis. Mar. 4, 2022)); see also Overton, 539 U.S. at 131-32. As long as incarcerated persons retain avenues to "maintain their relationship," limitations on their contact with others does not violate their right to association. Bilka, 447 F. App'x at 744 (citing Overton, 539 U.S. at 135).

The plaintiff's allegations do not state a claim for violation of his right to associate with his friends and family. Although the plaintiff alleges that the "back of cell kneel" restriction hindered his ability to use the telephone, he does not allege that it prevented him from using the telephone at all. He alleges that the restriction impacted his ability to contact his family members, friends and attorney, but he does not allege that he could not communicate with them through the mail. It also is not clear how long the plaintiff was subject to the "back of cell kneel" restriction because, as explained above, the complaint includes conflicting information about the date on which it was imposed. The plaintiff does not allege that the defendants had any involvement in placing him on the restriction until October 3, 2025, when Rozmarynoski did so. And he asserts that the restriction ended in October 2025.

The plaintiff alleges that Rozmarynoski extended the "back of cell kneel" restriction on him on October 3, 2025, in retaliation for the plaintiff opting to have a full due process hearing on his conduct report. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory

8

action." <u>Perez v. Fenoglio</u>, 792 F.3d 768, 783 (7th Cir. 2015) (quoting <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff may proceed on a retaliation claim against Rozmarynoski in her individual capacity based on these allegations.

The plaintiff alleges that all the defendants retaliated against him by intermittently extending his restriction since April 2025 without a valid reason because the plaintiff engaged in protected speech such as filing grievances. The plaintiff does not include specific information about when or why the defendants retaliated against him. These allegations are conclusory and do not state a claim. <u>See</u> <u>Iqbal</u>, 556 U.S. at 662.

In summary, the plaintiff may proceed on a claim that Rozmarynoski extended his "back of cell kneel" restriction on October 3, 2025 in retaliation for the plaintiff electing to have a full due process hearing on his conduct report. The plaintiff has not stated a claim against defendants Kent or Koehler, so the court will dismiss them.

Finally, the plaintiff filed a motion for a scheduling conference to "schedule the proceedings," confer on a settlement agreement and confer with the defendants about injunctive relief. Dkt. No. 9. There is no need for a scheduling conference. After defendant Rozmarynoski files a responsive pleading to the amended complaint, the court will issue a scheduling order setting deadlines for the parties to complete discovery and file motions for summary judgment. The court will deny the plaintiff's motion for a scheduling conference.

9

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for scheduling conference. Dkt. No. 9.

The court **DISMISSES** defendants James Kent and James Koehler.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendant Tonia Rozmarynoski. Under the informal service agreement, the court **ORDERS** this defendant to file a responsive pleading to the amended complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.42** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

10

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

11

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 15th day of July, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

12